KEMP vs. HOLLAND, ADM'R OF SMITH, DEC'D.

A widow must make her election of dower in six months, to entitle her to take under the third section of the act concerning dower.

APPEAL from Callaway Circuit Court, (In Chancery.)

TODD & ANSELL, *for Appellant, filed a written argument.*

REED & HARDIN, *for Appellee.*

1st. That the slave did not come to Smith in right of the wife. On the death of her father, Smith acquired a right to her distributive share of the personal estate, (slaves being such by the laws of Virginia,) which authorized him to sell, assign, or dispose of it as he pleased.— Wallace vs. Taliafero, 2 Call. Rep. 447, 491. At the sale, Smith purchased the slave Sophia. He had a right to bid or not, at his election; and consequently, stands precisely in the condition of any other purchaser. His purchases at this sale amounted to more than his wife's portion in the estate, and the additional sum paid out of his other funds. But as this slave was by virtue of the marriage his own absolute estate, a resulting trust in favor of the wife, cannot be contended for.

2nd. But if said slave had come to Smith in right of his wife, she lost the right by omitting to make her election in due time. Letters of administration were granted on Smith's estate, in October, 1840, and her deed of election presented to the Court in November, 1843. By the 6th section of the Dower Act of 1835, a widow, where there is no child of the intestate, is bound to make her election of dower within six months of the date of administration. Is it not equally important, and is she not bound, where there are children to make her election, in lieu of dower within the same time? But where is a child, or children, by former marriage, it is by election only that the widow acquires a right to separate part of the estate, until she make her election. She is entitled to only a child's part after payment of debts; and there being no separate right in the estate to guard, the administrator is at liberty to sell any part, taking care to act for the best interest of the distributees. Hence we see a reason why the widow should make her election in due time. The slave in question was sold by an order made twelve months after administration, by the Warren County Court. At this time, appellant's wife had no separate interest in this slave, for she had not made her election. Hamilton vs. O'Neil, 9 Mo. Rep. 11. The Court might well, therefore, order the

slave to be sold to pay debts.  It would be a strong game, indeed, if a widow could remain silent until the administrator had paid the intestate's debts out of that portion which she could not reach by election, and then come forward and claim all the estate which came by her to the exclusion of her late husband's children.  The fact that she claimed and received the $150, which the administration law gives to the widow, shows that this pretended election is an after thought.

3rd.  But the slave, even if appellant's wife had a right, was subject to the payment of debts, (Rev. Code, 1835, p. 228, sections 3 and 4,) and the administrator having sold for that purpose, neither he, the widow, nor purchaser, can set the sale aside, whether such sale was necessary or not.  She might, if she could show fraud and collusion between the administrator and purchaser;—but otherwise her remedy would be against the administrator.  See 1st Story, 406.  2 Hen. & Mun. Rep. 69—Sale vs. Roy.  2 P. Williams, 148.  1st Atkyns Rep. 462, and authorities cited in Note 1.  2 Bibb, 189—Henning vs. Conner.  3 J. J. Marshall, 161—162.  Lareu's heirs vs. Lareu's ex'r.  3 J. J. Marshall, 505, Ward vs. Lewis.  Newland on Contracts, 512, 514.  2 Williams on Executors, 670.

SCOTT, J., *delivered the opinion of the Court.*

John Kemp, in April, 1844, filed his bill for an injunction and relief in the Callaway Circuit Court, in which it is set forth that he intermarried with Elizabeth Smith, widow of Samuel Smith, dec'd, who died in Warren County, in the year 1840.  That Samuel Smith died leaving children by a former wife, and without children by his last wife.  That his wife, the said Elizabeth Smith, prior to her marriage with the said Samuel Smith, had received as a distributive share from the estate of her father, a slave named Sophia, who since has had two children.  That the said Samuel Smith died in solvent circumstances, leaving land, negroes, personal estate, money, and debts due him, and but little embarrassed,—his personal estate and debts due him fully competent to pay his debts. That the defendant, Thomas Holland, in October, 1840, took out letters of administration on the estate of the said S. Smith, in Warren County. That shortly after he had taken upon himself the burden of administration, and before any disposition was made of the slaves, his wife, the said Elizabeth Smith, gave notice to the said administrator, that she should claim as her dower, the slave Sophia and her increase, which had come to the said Samuel Smith in right of his wife Elizabeth Smith. Hearing that Holland was about to dispose of the said slave Sophia, for some purpose relative to the administration, Kemp attended the sale, and his wife with his consent gave Holland notice of her claim before the sale, and of her desire to have the said slave as a part of her dower, but notwithstanding the slave was sold, and he, Kemp, became the purchaser for five hundred and six dollars, upon a credit of 12 months, and gave his note with security for the purchase money.  That when the note fell

due, suit was brought thereon, and judgment obtained. That Kemp and wife, by deed, executed on the 6th November, 1843, released all right to the estate of Samuel Smith, other than the slave aforesaid, and her increase, and elected said slave and children as the dower of the said Elizabeth in the estate of her deceased husband, subject to the payment of debts, which deed was filed in the County Court of Warren County. That at the time of the sale of the said slave, and at the time of the execution of the deed declaring the election of dower, no distribution of the estate had been made, nor was such distribution practicable at the time, as no settlement had been made by the administrator. That no distribution has yet been made, nor has there been any assignment of dower. That the debts due by the estate did not require nor justify the sale of the slave, and that the administrator, by the hire of the slaves, and from the debts due the estate, and the sale of the perishable personal estate, could satisfy all demands against the estate. The bill concluded with praying that the judgment at law on the note given for the slave Sophia, may be perpetually enjoined, and the bond for the money be cancelled; if, upon a final settlement, allotment of dower and distribution of the estate, by the Warren County Court aforesaid, the said slaves of right belong to his, Kemp's wife, by right of her dower aforesaid, upon a full payment of the intestate's debts by the administrator, and such other relief as to equity belongs, and in the meantime, that the administrator be enjoined and restrained from collecting the said debt, until such settlement, allotment and distribution is made, and the further order of the Court.

The answer of the defendant, Holland, admitted most of the facts alleged in the bill;—professed ignorance of the fact whether the slave Sophia came to Samuel Smith in right of his wife. Denies that the estate of Smith was not embarrassed. Asserts that the debts amounted to $1500, and that the perishable property and debts due, were insufficient to satisfy them. That the sale bill amounted to a little upwards of $360, and but a small amount of the debts could be collected. Alleges that the slave Sophia and another were sold under an order of the County Court, a step necessary for the payment of debts.

There was a replication to the answer; and on the trial, the only evidence read, deemed material to be stated, was the records of the County Court of Warren County, showing the condition of the estate with respect to the debts. These records do not show that a sale of the slaves was unnecessary, nor do they show that the debt due by Kemp for the

17

slave Sophia is not necessary for the payment of debts. The contrary may rather be inferred.

On the hearing, the injunction which had been previously granted, was dissolved, and the bill dismissed.

Assuming that the slave Sophia came to Samuel Smith in right of his wife, it is objected that his widow, Elizabeth Smith, did not make her election to take under the third subdivision of the third section of the act concerning dower, Rev. Code, 1835, within the time prescribed by law, and was therefore thrown on the general provision respecting dower. The third subdivision of the 3rd section of the act concerning dower, enacts that when the husband shall die having a child or descendant, but not by his last marriage, his widow may, in lieu of dower, elect to take in addition to her real estate, the slaves and other personal property in possession of the husband, that came to him in right of the wife, by means of the marriage. The 5th section of the same act provides, that when the husband shall die without a child or other descendant living capable of inheriting, the widow shall have her election to take her dower as provided in the 1st section of the said act discharged of debts, or the provisions of the 3rd section subject to debts. The 6th section provides that " such election shall be made by a declaration in writing, acknowledged before some officer authorized to take the acknowledgement of deeds, and filed in the office of the Clerk of the Court in which letters testamentary or of administration shall have been granted, within six months after the grant of the same."

It was contended that the words " such election," in the last recited section, only referred to the election given by the preceding section. The statute had provided that in two events, widows might make an election to take dower in a manner different from the usual mode. This election is given by two different sections, and a subsequent section immediately following them provides that " such election " shall be made in a particular manner, and within a prescribed time. There is nothing in the import of these words which would limit their reference to election given by the 5th section. There is no reason why they should thus be limited in their application. The necessity for prescribing a manner and limiting a time within which the election should be made, was as urgent in the one case as in the other. The inconvenience resulting from an indefinite time in which an election as to the kind of dower to be taken is to be made, is as great in the one case as in the other. When neither reason nor the import of the words employed would limit there influence only to the 5th section, there is no propriety in narrow-

ing their influence to a degree that would leave uncovered by the statute many cases that would as much require its correction as those for which it is admitted it was provided.

No election having been made by the widow within the time prescribed by law, that she would take the slaves and other personal property in the possession of her deceased husband at the time of his death, which came to him in her right by means of the marriage, all relief to the complainant on the ground that the slave Sophia, sold to him by Kemp, the administrator, was his own property, was properly refused.

As no writ of error will lie on an order dissolving an injunction, there can be no complaint on the score of its dissolution. Powers & Ashley vs. T. & C. Waters. The only remaining point then in the case will be, whether the account of the administration, as exhibited, would justify this Court in extending any relief to the complainant. Is there any thing set forth which would show that the enforcement of the judgment would be oppressive? The law has entrusted the County Courts with the settlement and distribution of the estates of deceased persons. Those tribunals know best the condition of an estate at any time, and when money is wanted for the purposes of administration. It would certainly very much embarrass the administration of estates, if every debtor who might ultimately have a distributive share in it, could at any time enjoin the collection of debts due by him, and compel a settlement of the accounts of the estate in order to ascertain whether there might not be found something due him. These negroes have been sold by order of the County Court, for the purposes of paying the debts; there is nothing showing that such a step was not necessary, and because a person having an interest in the estate became the purchaser, we are required to enjoin the collection of the purchase money. We do not think that this Court would be warranted in interfering with this matter unless it appeared that the complainant, Kemp, had been allowed a distributive share of the estate. In such an event, as it would be oppressive to collect money from a debtor, merely that it again be returned to him, an injunction would be proper. But in this case, no order for distribution has been made, the money is wanted for the payment of debts, and even if it were not, it by no means appears whether all or what proportion of it would belong to the complainant upon a distribution of the assets.

The other Judges concurring, the decree of the Court below will be affirmed.